EASTERN DIS.
May, 1841.

BARKER
vs.
WHITNEY.

</div>

## BARKER vs. WHITNEY.

APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

There is no particular form of notice of protest necessary, so that enough is stated to inform the parties to the bill, of their liability and put them on their guard.

Notice may be sent in two ways; one by the holder to all the parties to the bill; which will enure to the benefit of any endorser who shall pay it, in an action against his predecessors or the drawer, or the holder may notify his immediate endorser and the next, &c.; and one day is allowed to each party to deposit notice in the post-office, &c.

A party whose name is not on a bill, though interested in it, is not entitled to the benefit of the rule allowing each party a day to send notice to the party before him.

If the holder of a bill or note place it in the hands of his banker or agent with his name on it, the agent is only bound to give notice of its dishonor to his customer, and he to the party next entitled to notice.

But where a bill is protested and notice for the endorser sent to the third person, whose name is not on the bill, and he on the following day deposits it in the post-office to be sent to the endorser, the latter will be discharged by the delay.

This is an action on two bills of exchange of the following tenor:

$2000.

New Orleans, May 2d, 1839.

" Sixty days after sight of this first of Exchange, second unpaid, pay Benjamin Whitney, or order, $2000; value received, and charge the same to account of

GILLINGHAM & CO."

To L. H. GILLINGHAM,   }        "May 15, 1839.
    *Philadelphia.*  }  "LEWIS H. GILLINGHAM."

Endorsed, " Pay A. Benson & Co."

B. WHITNEY.

"Without recourse to us."

"A. BENSON & CO."

This bill was protested, at maturity, at the request of the Commercial Bank of Philadelphia, on the 5th July, 1839, and notice thereof sent to Jacob Little & Co., New York; who transmitted the one for the defendant, to H. Bean of New Orleans, their agent.    The other bill is in precisely the same situation, and judgment is prayed on both by Andrew S. Barker against the defendant, who is the endorser thereon.

The defendant's plea is want of due and proper notice.

There was judgment for the plaintiff and the defendant appealed.

*Jacob Barker*, for the plaintiff.

*Lockett & Micou*, for the defendant.

*Garland, J.* delivered the opinion of the court.

The plaintiff, as holder of two bills of exchange drawn by Gillingham & Co., of New Orleans, on L. H. Gillingham of Philadelphia, at sixty days sight, sues the defendant as the payee and endorser, claiming $3,500 with interest and damages.    The bills were accepted by L. H. Gillingham, the one for $1500 falling due the 5th of July, 1839, and the other for $2,000 the 17th of the same month.    The bills were purchased by Horace Bean & Co., of New Orleans, for Jacob Little & Co., of New York.    The name of this latter firm is not

on either of the bills.  They are both endorsed, "pay A. Ben-
son & Co., or order ;  B.  Whitney ;"  and again endorsed by
by Benson & Co., without  recourse.   When the bills became
due, they were held by the Commercial Bank of Pennsylvania
and protested for non-payment at the instance of that corpora-
tion.   The protests are in the usual form, stating the present-
ment, demand of payment, refusal to pay and protest.   The
Notary in his testimony says the notices to Gillingham & Co.
were put in the post-office, in Philadelphia, on the days the
bills were protested, directed to New Orleans.   The notices
to Whitney, the endorser, whose residence he says was not
marked on the bills or known to him, he enclosed on the same
days to Little & Co., at New York, as directed.   The notice
on the first bill, is as follows :

*Philadelphia*, July 5th, 1839.

Lewis H. Gillingham's acceptance of Gillingham & Co's
draft or Bill of Exchange, in your favor, and by you endorsed,
for 1500 dollars, being this day due and unpaid, is delivered to
me for protest, by the Commercial Bank of Pennsylvania, and
you will be looked to for payment, of which you hereby have
notice.

To Benjamin Whitney.

EDWARD HURST,

*Notary Public and Attorney at Law*, No 38 Walnut Street.

The other notices, to both drawers and endorsers, are in
the same form and words, except as to dates, sums and
names.   The notices for Whitney were sent, by Little & Co.,
to Horace Bean & Co., by whom they were delivered to Whit-
ney on the 16th and 29th of July.   It is in evidence that the mail
of the 6th of July, 1839, from Philadelphia, arrived in New
Orleans on the 14th, that of the 7th, on the 16th, that of the
17th on the 25th, that of the 18th on the 26th.   The mail from
New York of the 8th arrived on the 17th of July, and those of
the 18th, 19th and 20th on the 29th of the same month.   The
evidence of the clerk of Gillingham & Co., establishes pretty

73    vol.   xviii.

EASTERN DIS. *May, 1841.*

BARKER *vs.* WHITNEY.

clearly that they received the notices to them on the 14th and 26th of July, two days in one case and three in the other, previous to the endorser being notified. This was in consequence of the notices, for Whitney, being sent to New York instead of New Orleans.

Various questions are raised in relation to the protest, the form of the notice and other matters, but the opinion we entertain as to the sufficiency of the notice makes it unnecessary to examine any of the other points raised.

*There is no particular form of notice of protest necessary, so that enough is stated to inform the parties to the bill, of their liability and put them on their guard.*

It is well settled that no particular form of notice is necessary, so that enough is stated to inform the parties to the bill of their liability and to put them on their guard. This notice the endorser must have sent to him to hold him responsible. It may be sent in two ways. One by the holder of the bill sending a notice to all the parties to it, which notice will enure to the benefit of any endorser who shall pay the bill, in an action against his predecessors or the drawer. The other is, by the holder giving notice to his immediate endorser and he to the next, and so on to the drawer. When this circuitous mode is adopted one day is allowed to each party to deposit the notice in the post-office, or send it by the ordinary conveyance. This mode the plaintiff claims to have the advantage of, and if the names of Jacob Little & Co. were on the bills, we should say without hesitation he would be entitled to the benefit of it. But we are of opinion this rule applies exclusively to the parties whose names appear on the paper. There is no evidence that the Commercial Bank of Pennsylvania was the agent of Little & Co., and that to show Benson & Co. were agents, is of the weakest character; and they had passed the bills by endorsements calculated to throw suspicion on them, which should have made any subsequent holder very cautious as to his proceedings. But supposing both Benson & Co. and the bank to have been the agents of Little & Co., they should, as prudent men, have informed them of the residence of Whitney, and if they did not know it, of the agents through whom the bills were purchased, so that notices might be sent direct. This, if

*Notice may be sent in two ways; one by the holder to all the parties to the bill; which will enure to the benefit of any endorser who shall pay it, in an action against his predecessors or the drawer; the other by the holder may notify his immediate endorser, and he the next, &c.; and one day is allowed to each party to deposit notice in the post-office, &c.*

not absolutely requisite, would have been more just towards all parties.

We think the true rule is laid down in the case of Flack vs. Green; 3 Gill & Johnson's Reports of the decisions of the Supreme Court of Maryland, 474. That a person whose name is not on the bill, though interested in it, is not entitled to the benefit of the rule allowing each party a day to send the notice to the party before him. Much inconvenience, and we think serious difficulties would often arise, from allowing notices being sent through persons not parties to a bill, and it is easy to avoid them by requiring the names of all interested to appear.

*A party whose name is not on the bill, though interested in it, is not entitled to the benefit of the rule allowing each party a day to send notice to the party before him.*

If the holder of a bill or note, place it in the hands of his banker or agent, with his name on it, the banker or agent, is only bound to give notice of its dishonor to his customer, and he to the party next entitled to notice, or to him whom he wishes to hold liable.

Under such circumstances, the circuitous mode of giving notice would have high authority to sustain it; Bayley on Bills, Ed. 1826, p. 173, 174; 5 Mass. Rep., 167; 2 Johnson's Cases, 1.

*If the holder of a bill or note place it in the hands of his banker or agent, with his name on it, the agent is only bound to give notice of its dishonor to his customer, and he to the party next entitled to notice.*

But in a case where it is not shown that the holder of the bill at whose instance it was protested, was the agent or banker of the party claiming to be interested, the name of whom is not on the bills or on the record, in any manner, we do not feel authorized to relax the strict rule of law in relation to notice, in favor of a party who has taken the bill, since it was protested, with a full knowledge of all the circumstances, and without the endorsement of the party said to have so been interested.

*But where a bill is protested and notice for the endorser sent to the third person, whose name is not on the bill, and he on the following day deposits it in the post-office to be sent to the endorser, the latter will be discharged by the delay.*

The plaintiff insists strenuously on a promise to pay the bills after the notice of protest. We have examined the evidence in support of this claim, and do not think it is sufficient of itself to sustain the judgment of the Commercial Court.

Upon a full examination of the case, as it now stands before us, we do not think the plaintiff is entitled to recover.

The judgment of the Commercial Court is therefore annul-

led, avoided and reversed, and ours is one of non-suit against the plaintiff with costs in both courts.